UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME P. GENOVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12 C 3105 |
| | ) | |
| ERIC KELLOGG, JOSEPH LETKE, | ) | |
| LETKE & ASSOCIATES, INC., and the | ) | |
| CITY OF HARVEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion for summary judgment of Plaintiff Jerome Genova ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") against Defendants Eric Kellogg ("Kellogg"), Joseph Letke[1] ("Letke"), Letke & Associates, Inc. ("L&A") and the City of Harvey (collectively "Defendants"). For the following reasons, the Court denies Plaintiff's motion for summary judgment. Any remaining discovery proceedings are to continue proceeding in front of Magistrate Judge Schenkier.

---

[1] We recognize that Letke has repeatedly failed to participate in the defense of his case. *See infra* Parts II(B) and III. However, Defendants' counsel filed the response to the pending motion for summary judgment on behalf of all Defendants, including Letke, and has yet to withdraw from representing Letke.

# BACKGROUND

## I. Facts

The following facts are taken from the parties' respective statements, responses and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1 ("Rule 56.1"). We review each Rule 56.1 statement and disregard any argument, conclusion or assertion unsupported by the evidence in the record. The Court is mindful of its duty to weigh the credibility of the evidence presented by all parties and only relies on relevant, admissible evidence when ruling on the motion for summary judgment.

### A. Deficient Pleadings

Plaintiff argues that Defendants failed to: (i) properly dispute facts in accordance with Rule 56.1; and (ii) plead their statement of additional facts as required. For any disagreements with Plaintiff's facts, Defendants were to make specific references to affidavits, parts of the record, and other supporting materials relied upon. *See* N.D. Ill. L.R. 56.1(b)(3)(B). However, it is within the Court's discretion to deem an opposing party's properly supported factual assertions admitted following a violation of the Local Rules, but it may also exercise that discretion "in a more lenient direction." *See* L.R. 56.1(b)(3)(C); *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). The Court acknowledges that some of Defendants' responses contain only a citation without any factual statement, or a statement of fact without a specific citation to an exhibit, but in their response to Plaintiff's 56.1 Statement of Facts, Defendants do note corresponding exhibits in the record before

stating whether a dispute exists. The Court will utilize its discretion to show leniency and will not deem admitted the facts at issue that are plainly disputed in the record. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012) (reversing summary judgment where facts not in memorandum were in L.R. 56.1(b) statement, and it was thus "clear from the summary judgment filings in the district court that dispute of material fact remains").

As for the sufficiency of Defendants' statement of additional facts, eighteen of the nineteen paragraphs do not include a single citation to supporting materials in the record. Thus, for those additional facts Defendants failed to properly plead, the Court also uses its discretion and will not consider them as part of the record.

### B. Undisputed Facts

After his term as mayor of the City of Calumet ended, Letke employed Plaintiff to work at L&A from June 1, 2009 to April 30, 2010, while Letke served as the comptroller for the City of Harvey. L&A was a certified public accounting firm based in Glenwood, Illinois. Plaintiff served as L&A's marketing director on a contractual basis. Plaintiff was not an employee of the City of Harvey. On April 29, 2010, Letke terminated Plaintiff's employment with L&A.

During Plaintiff's employment with L&A, Kellogg was the mayor of the City of Harvey. On several occasions, Kellogg allegedly threatened to end Letke's employment as the comptroller if he did not fire Plaintiff, due to Plaintiff's previous support of Kellogg's political rival, Nicholas Graves ("Graves"). As background, the

reason why Graves was Kellogg's alleged political opponent is that in 1999, Kellogg ran for mayor of City of Harvey against Graves. Plaintiff and his ex-wife, Rosemaria, supported Graves, who eventually won the election. In 2003, Graves and Kellogg again ran against each other in the City of Harvey's mayoral election, and Plaintiff and Rosemaria again supported Graves. Rosemaria served as Graves's campaign manager during the 2003 election. Kellogg defeated Graves in the 2003 rematch. Plaintiff and Rosemaria allegedly maintained a personal and professional relationship with Graves since his 2003 defeat up until his death. Rosemaria gave the eulogy at Graves' funeral where Kellogg also spoke on behalf of Graves.

According to a memorandum written by Kellogg to Alderman Nesbit, on December 16, 2008 (the "Memorandum"), "Mr. Letke is not an employee, rather an agent and independent contractor of the City of Harvey . . ." The Memorandum cites language from Section 2-16-020 of the City of Harvey Municipal Code, which "sets out the boundaries and duties of the position of comptroller," stating "[t]he comptroller shall be appointed by the mayor, by and with the advice and consent of the city council."

### C. Procedural History

On April 26, 2012, Plaintiff filed a one-count complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging wrongful termination in violation of the First Amendment. On February 28, 2013, this Court denied Defendants' motions to dismiss. On August 21, 2014, Plaintiff filed a motion to compel Letke to appear for

his deposition, or in the alternative, for default judgment, which Magistrate Judge Schenkier entered and continued on August 26, 2015. Even with a court order, Letke still failed to appear for his deposition. On October 1, 2015, Plaintiff filed a motion for default judgment as to Letke and L&A. On October 30, 2014, the Court adopted Magistrate Judge Schenkier's report and recommendation, granting Plaintiff's motion for default judgment against Letke, personally, and denied as to L&A. The parties subsequently filed their prove-up affidavits and papers. However, on December 11, 2014, the Court deferred the entry of default judgment against any and all Defendants because the entry of default judgment against one defendant may be barred in some cases where a plaintiff alleges joint conduct of defendants. *See Genova v. Kellogg*, No. 12-CV-3105 (N.D. Ill., Order, Dkt. 128, entered Dec. 11, 2014). To prevent possible inconsistencies with the Court's future liability and damages determinations for the other Defendants, the Court decided to continue with the determination of liability before entering judgment against Letke for over $650,000.00.

Magistrate Judge Schenkier stayed further deposition discovery pending our ruling on the instant motion for summary judgment, filed by Plaintiff on February 24, 2015. Defendants have yet to file a motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant

bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## DISCUSSION

### I. Plaintiff's Employee Status

As a threshold matter, the Court must address Plaintiff's status as a private or public employee. The record shows that Plaintiff worked as a marketing director on a contractual basis for L&A, a private company, at the same time Letke served as comptroller for the City of Harvey. In his briefs, Plaintiff alludes to his status as a public employee when he applies the "public concern" test for analysis of his First Amendment retaliation claims, which is used by courts when assessing alleged constitutional violations of public employees. Most likely, Plaintiff provided his analysis on the "public concern" test due to the inconsistency between *Landstrom v.*

*Ill. Dep't of Children & Family Servs.*, 892 F.2d 670 (7th Cir. 1990), and *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009). Defendants state in their interrogatory answers that Plaintiff was not an employee of the City of Harvey and that the City of Harvey's authorities did not control the employment decisions made by its "vendors." Additionally, the parties dispute whether Plaintiff worked on projects for the City of Harvey while at L&A.

Plaintiff's suggestion that he qualifies as a public employee of the City of Harvey because he served as a contractual employee of an independent contractor of the City's is unavailing. Plaintiff is not a public employee. Plaintiff was contractually hired and paid by Letke to perform new business development for L&A. Unlike Letke, who was an independent contractor of the City of Harvey when he served as comptroller[2], Plaintiff did not work for the City of Harvey and never received income for such activity. Genova's political affiliation or "speech" was as a private citizen. *See Landstrom*, 699 F. Supp. at 1279 (where the court recognized that the "public concern" test "could prove too much if translated with full vigor to a nonemployee citizen's statement upon a matter of personal interest.... No public official should be permitted to muzzle a private individual with impunity on matters purely personal to that individual either.") The Court finds that Plaintiff's "public concern" arguments are therefore, inapplicable, to establish whether he engaged in protected speech. *See Wysocki v. Crump*, 838 F. Supp. 2d 763, 770 (C.D. Ill. 2011) ("Following the Seventh

---

[2] This assertion is according to the language in the Memorandum.

Circuit logic, [Plaintiff's] claim should not be subject to the public concern test, given that [Plaintiff] spoke to Defendant[s] as a private citizen . . .").

## II. Plaintiff's Claim for First Amendment Retaliation

Plaintiff asserts only one cause of action against Defendants, which is based on Section 1983. Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 ("Section 1983"). Since a Section 1983 cause of action must be against a "person," in order "[t]o recover damages under Section 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). Individuals may be held liable under Section 1983 if they caused or participated in the alleged constitutional deprivation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Moreover, private action only becomes state action when:

> [P]rivate actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself.

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815-16 (7th Cir. 2009) (citations omitted).

It is important to note that Plaintiff has filed the instant motion for summary judgment, not Defendants. Summary judgment decisions on First Amendment retaliation claims involve a burden-shifting framework. *See Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). In the *prima facie* case, Plaintiff must demonstrate that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (citing *Bridges*, 557 F.3d at 546). If Plaintiff makes a *prima facie* showing, "the burden shifts to the defendant to show that the harm would have occurred anyway." *Thayer v. Chiczewski*, 705 F.3d 237, 251-52 (7th Cir. 2012) (citation and internal quotation marks omitted). If Defendants make this showing, "the burden shifts back to [Plaintiff] to demonstrate that the proffered reason was a mere pretext and that the real reason was retaliatory animus." *Id*. at 252. Defendants can present either direct or circumstantial evidence to meet their respective burdens. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). "Direct evidence is evidence which, if believed by the trier of fact, will prove that the particular fact in question without reliance upon inference or presumption. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) (quoting *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998)). Circumstantial evidence is

evidence that requires a trier of fact to infer that retaliation occurred. *Kidwell*, 679 F.3d at 965. "To demonstrate the requisite causal connection in a retaliation claim, [Plaintiff] must show that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (internal citation and quotation marks omitted).

The parties do not dispute the first two elements— Plaintiff engaged in activity protected by the First Amendment by allegedly affiliating himself with Kellogg's political opponent and as a result, he suffered a deprivation likely to deter such activity when he was terminated from L&A. *See Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006) ("the alleged injury 'need not be great in order to be actionable.' "). As such, questions remain only as to whether the parties have satisfied their respective burdens; specifically, we must decide if Plaintiff's First Amendment activity was at least a motivating factor in the decision to impose the deprivation and review any evidence of pretext.

## A. Kellogg

### 1. Fifth Amendment Invocation

The Court must first determine if we should draw adverse inferences from Kellogg's invocation of his Fifth Amendment privilege. "In civil cases, unlike criminal cases, juries are free to draw inferences from a defendant's invocation of that Fifth Amendment privilege, but such an invocation cannot substantiate civil liability on its own." *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 919 (N.D. Ill. 2013)

(citing *LaSalle Bank v. Segunban*, 54 F.3d 387, 389-91 (7th Cir. 1995)).  Instead, a Fifth Amendment invocation must be viewed in light of the other evidence proffered. *Id.*  We must remember that the Fifth Amendment can properly be called upon only when honest answers would tend to subject the answer to criminal liability.  *Padilla*, 932 F. Supp. 2d at 919 (citing *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002)).  A defendant seeking to avoid the weight of a negative inference must advance something explaining a reason for his or her Fifth Amendment invocation other than guilty conduct associated with the civil action.  *Id.* at 919 (noting the difference amongst circuits in allowing a negative inference in the context of a summary judgment motion).

During his deposition, Kellogg asserted his Fifth Amendment privilege for deposition questions related to the Harvey Hotel Deal, which was (and may still be) under criminal investigation.  Kellogg insists that he was not involved in any of the alleged wrongdoing in that matter.  Plaintiff argues that this admission should lead us to draw an adverse inference from Kellogg's refusal to answer certain interrogatories and questions asked at his deposition.  However, the Court will not use the invocation of the Fifth Amendment against Kellogg at this summary judgment phase of litigation because of: (i) the unsettled case law revolving around whether a negative inference is appropriate in the context of a summary judgment motion; and (ii) Kellogg's valid reason for invoking his Fifth Amendment rights (the criminal investigation surrounding the Harvey Hotel Deal).

## 2. Kellogg's Liability Under Section 1983

We must next assess Kellogg's Section 1983 liability, specifically whether he was acting under the color of state law when Plaintiff alleges his constitutional rights were violated. As the mayor of the City of Harvey at the time Plaintiff was fired, it is clear that Kellogg was working as a public employee. To answer the question of whether he was acting under the color of state law, we must focus on Kellogg's specific actions. A government actor can generally be held responsible for a private decision when a state actor has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell-Baker v.Kohn*, 457 U.S. 830, 840 (1982). No bright line rule exists for distinguishing between personal pursuits and activities taken under color of law. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). The Supreme Court has devised a two-part test for courts to follow in determining whether conduct which allegedly deprived a plaintiff of a federally protected right is attributable to the state: (i) the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (ii) the depriving party must be "a person who may fairly be said to be a state actor. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). "The important consideration . . . is the nature of the specific acts performed." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505-06 (7th Cir. 2001).

In support of his color of law argument, Plaintiff states that Kellogg's duties included appointing and supervising the City of Harvey's department heads, including Letke. This position allegedly allowed Kellogg to exercise coercive power over Letke and convince him to terminate Plaintiff, which Plaintiff finds to be an act of the State. However, Plaintiff relies on facts he deems as admitted based on both Letke's failure to participate and Defendants' response to his Rule 56.1 facts. The Court has already discussed how it will treat those facts in the Background Section, Part I(A), *supra*. Assuming, without deciding, Kellogg was acting under the color of state law when Plaintiff's First Amendment rights were violated, there still must be no triable issues of fact as to: (i) the remaining third element of a *prima facie* case for First Amendment retaliation; and (ii) the parties' shifting burdens, for us to even consider granting summary judgment in favor of Plaintiff.

To support a *prima facie* showing of the third element, that the First Amendment activity was at least a motivating factor in the decision to impose the deprivation, it is necessary that Plaintiff establishes Kellogg's *knowledge* of Plaintiff's political affiliation with Kellogg's former political opponent, Graves. As evidence, Plaintiff provides: (i) a letter[3] involving a City of Harvey matter that both him and Kellogg are copied on; (ii) information about Graves' funeral where Kellogg and Plaintiff's ex-wife both spoke; and (iii) Plaintiff and his ex-wife's attestations, to show that Kellogg was privy to Plaintiff's political affiliation with Graves. Also,

---

[3] We must note that the letter does not convince us that Kellogg was aware of Plaintiff's political association because it does not reference Plaintiff's political affiliation or lack thereof.

Plaintiff claims that Kellogg knew him as Rosemaria's husband because she was politically active, headed various committees, regularly attended city council meetings where Kellogg was present, and personally introduced herself to Kellogg during the 1999 campaign as a consultant on Graves' campaign and Plaintiff's ex-wife.

Kellogg states in his deposition that he had no knowledge of Plaintiff's prior political affiliation. He contends that Plaintiff's deposition testimony and his ex-wife's affidavit are self-serving pieces of evidence, which a trier of fact should have the opportunity to gauge. The Court agrees that a jury is better suited to determine this credibility issue. *See Hill*, 724 F.3d at 967 (where the Seventh Circuit emphasized that "the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). But at the summary judgment phase, Kellogg, as the non-moving party, must do more than question another party's self-serving testimony, he must cite facts in the record to support an assertion that a triable issue exists as to Kellogg's knowledge. In light of Kellogg affirmatively denying any knowledge of Plaintiff's political association, Plaintiff provides more than his belief that Kellogg knew of his protected activity and indeed, he only needs to make a *prima facie* showing of this third element. Therefore, the burden shifts to Defendants to demonstrate that the harm to Plaintiff would have occurred, nevertheless, based on a legitimate, non-discriminatory reason. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

In his answers to interrogatories, Letke gives four reasons for Plaintiff's termination: (i) financial difficulties; (ii) loss of a major account; (iii) relationship conflicts; and (iv) ethical issues. Understanding that Plaintiff was an at-will employee of L&A, Kellogg has met his burden of providing legitimate, non-discriminatory reasons. The law does not require anything more. Assuming that Kellogg is able to successfully rebut Plaintiff's *prima facie* case of retaliation for political affiliation, the burden shifts back to Plaintiff to show that the proffered reasons were pretextual in nature.

After review, the Court finds that Plaintiff has not presented sufficient evidence of pretext for us to grant summary judgment in his favor[4]. "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). A plaintiff can establish pretext by demonstrating that "(1) the employer's reason had no basis in fact; (2) that the explanation was not the real reason for its action; or (3) that the reason stated was insufficient to warrant the adverse job action." *McArdle v. Peoria Sch. Dist. No. 150*, 833 F. Supp. 2d 1020, 1029 (C.D. Ill. 2011) *aff'd*, 705 F.3d 751 (7th Cir. 2013) (internal citation omitted). We recognize that Plaintiff could not ask Letke during a deposition about the reasons Letke provided for Plaintiff's termination because Letke refused to appear, but the parties clearly disagree on whether Letke's purported reasons for firing Plaintiff were pretextual. It is quite possible that a reasonable jury

---

[4] Again, Plaintiff relies heavily on facts he argues should be admitted based on Defendants' response to his Rule 56.1 statement of facts.

could reach the conclusion that the reason Letke fired Plaintiff was nonpolitical. Accordingly, the Court cannot conclusively decide that the reason for Plaintiff's termination had no real basis in fact or was somehow a phony excuse for his termination. *See Brown v. Cnty. of Cook*, 661 F.3d 333, 337 (7th Cir. 2011) ("If all that's charged is discrimination on political grounds, *any* nonpolitical ground that the defendant can prove would have caused the discrimination regardless of the presence of political hostility will preclude liability.") (emphasis in original). Based on the above reasoning, and bearing in mind that discovery technically remains open, the Court refuses to grant summary against Kellogg and in favor of Plaintiff at this time.

### B. Liability of Letke and L&A

With respect to Letke, the Court must also make an initial determination as to whether there is enough evidence showing that he acted under the color of state law when he fired Plaintiff[5]. Letke's status as a public employee or private individual remains an issue. Nonetheless, like with a government official, when a plaintiff brings a Section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private person or entity acted under the color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). A non-governmental official acts under "color of law," by "jointly engag[ing] with state

---

[5] Plaintiff is incorrect that "Defendants' response should be stricken to the extent it relies upon the answers of Joseph Letke because the Court entered default against him on October 31, 2014." On December 11, 2014, this Court deferred the entry of default judgment against any and all Defendants because the entry of default judgment against one defendant may be barred in some cases where a plaintiff alleges joint conduct of defendants. *See* Dkt. 128.

officials in the prohibited action." *Adickes v. Kress*, 398 U.S. 144, 152 (1970). This is a high standard. "[T]here must be evidence of a concerted effort between a state actor and [a private] individual." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).

In the instant matter, Plaintiff is suing Letke in his individual capacity, and not in his official capacity. Letke terminated Plaintiff's employment with L&A, Letke's personal accounting firm, during the same time that Letke served as comptroller of the City of Harvey. As comptroller, it is undisputed that Letke handled the City of Harvey's business matters and worked on a contractual basis as the City's financial advisor, but the Memorandum states that Letke, as the comptroller, was "an agent and independent contractor of the City of Harvey" and not a city employee. However, irrespective of the language in the Memorandum, the Supreme Court has previously acknowledged that independent contractors are often employed to perform "tasks that would . . . otherwise be performed by salaried Government employees," *Logue v. United States*, 412 U.S. 521, 532 (1973), which, in conjunction with other facts, may cause a jury to find Letke to be a state actor. Equally, it is evident that the parties disagree over: (i) the level of involvement L&A, Letke, and his employees had with the City of Harvey's projects, including the Harvey Hotel deal; (ii) Letke's prior political associations with Kellogg, before he was appointed comptroller; (iii) whether Kellogg knew of Plaintiff's political affiliation; and (iv) if the alleged pressure by Kellogg on Letke to fire Plaintiff constituted private action or a concerted action by public officials.

If Letke was acting in a public official capacity, the question of color of law would be simpler because, generally, acts of a state or local employee in his official capacity occur under color of law regardless of whether his conduct was in furtherance of the state's goals or whether the actions constitute an abuse of power. *West v. Atkins*, 487 U.S. 42, 49-50 (1988). State officials who act without the clothing of state authority do not subject themselves to Section 1983 liability. *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). On the other hand, if Letke acted as a private individual when he fired Plaintiff, the issue develops more complexity because Letke may be subject to Section 1983 liability if he acted in a concerted effort with Kellogg, a public official.

Viewing all facts and drawing all inferences in favor of Letke, the Court finds the issue of whether Letke was acting under the color of law when he fired Plaintiff to be a jury question; there remain "unanswered questions of fact regarding the proper characterization of the actions." *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990) (internal citation omitted). We "cannot categorically say that [Letke] was not acting under the color of state law." *See Flood v. Carey*, No. 06 C 2980, 2011 WL 5866260, at *4 (N.D. Ill. Nov. 21, 2011). Both parties have tendered evidence in support of their positions, and due to the dispositive, triable issue of facts in dispute, a jury is in the best position to resolve the color of state law issue. Since action under color of state law is a jurisdictional prerequisite to a Section 1983 claim, the remainder of Letke's Section 1983 liability issues need not be further discussed as this

18

question of fact precludes summary judgment.  *See Bladdick v. Pour*, 833 F. Supp. 2d 1032, 1039 (S.D. Ill. 2011) (where the court found that there was a genuine issue of material fact exists as to whether or not a defendant was acting under the color of state law).   Because the Court does not find that summary judgment is appropriate against Letke, we refuse to enter summary judgment against L&A.[6]

## C. The City of Harvey's Liability

Plaintiff argues that summary judgment should be entered against the City of Harvey because Kellogg's final policymaking authority under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) was the moving force behind the deprivation of Plaintiff's constitutional rights.  Defendants disagree.  They cite to both the Memorandum, which states that "the comptroller shall be appointed by the mayor, by and with the advice and consent of the city council" and Kellogg's deposition testimony.[7]  At his deposition, Kellogg explained that he could only vote on matters in the City of Harvey if there was a tie amongst the city council members.

---

[6] Plaintiff argues L&A is also liable under Section 1983 based on Letke's status as the company's principal and president.

[7] In his reply, Plaintiff asks us to take judicial notice of a Harvey Municipal Code, Section 2-04-020(A), currently not in the record, because Defendants mistakenly cite to the Illinois Municipal Code.  Plaintiff's assertion that Defendants failed to make other sections of the Harvey Municipal Code part of the record, none of which are mentioned in the previously cited Memorandum, is wholly unconvincing.  Taking judicial notice of Section 2-04-020(A) does not all of a sudden prove that Kellogg had final policymaking authority on the decision to terminate Letke.  Thus, we refuse to take judicial notice of such at this time and will continue to look at the evidence presented in the record before us.  *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (judicial notice "merits the traditional caution it is given, and courts should strictly adhere to the criteria by the Federal Rules of Evidence before taking judicial notice of pertinent facts.")

To support *Monell* liability, Plaintiff must plead the violation of his Section 1983 rights "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Thompson v. Bd. of Educ. of City of Chi.*, No. 11 C 1712, 2014 WL 1322958, at *4 (N.D. Ill. Apr. 2, 2014) (citation omitted). A "policy," is an express policy, a widespread and permanent practice, or action by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Whether a particular official has final policymaking authority is a question of state law. *Wragg v. Vill. of Thorton*, 604 F.3d 464, 468 (7th Cir. 2010). To maintain his Section 1983 claims, Plaintiff must demonstrate that the City of Harvey either delegated final policymaking authority to Kellogg or ratified Kellogg's action. *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009). Under the delegation theory, the person or entity with final policymaking authority must delegate the power to make policy, not simply the power to make decisions. "There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Kujawski v. Bd of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999) (citations omitted).

At this time, the Court finds that Plaintiff has failed to prove that the City of Harvey abdicated its authority, including delegating Kellogg with the authority to set policy for hiring and firing procedures of the Comptroller's office, unreviewable by the city council. In fact, we cannot find any evidence in the present record that would

lean in favor of such a proposition.  Summary judgment in favor of Plaintiff against the City of Harvey is therefore, denied.

## III. Deferred Entry of Default

Plaintiff alleges his First Amendment retaliation claim against Kellogg and Letke, individually and jointly.  He does not set out a separate or individual basis of liability for any defendant—they are all connected based on the same set of circumstances (and allegations).  A court cannot grant default judgment against some defendants when doing so may lead to inconsistent judgments with the remaining defendants, such as when they are jointly liable.  *See In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1262 (7th Cir. 1980).  Even when defendants are not jointly liable, they still may be similarly situated such that a default judgment against some of them can produce an inconsistent, unfair outcome if the remaining defendants prevail on the merits.  *Cent. Laborers' Pension, Welfare & Annuity Funds v. Berco Const., Inc.*, No. 10-CV-209-WDS, 2013 WL 2147424, at *3 (S.D. Ill. May 15, 2013) (citing *Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252, 255 (7th Cir. 1987).  Consequently, the Court will continue to defer the entry of default judgment against Letke because this opinion has not conclusively determined the liability of any Defendants.

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for summary judgment is denied. Any remaining discovery proceedings are to continue proceeding in front of Magistrate Judge Schenkier.

_____
Charles P. Kocoras
United States District Judge

Dated: 6/25/2015